# JANET P. KREMENITZER *v.* MARTIN W. KREMENITZER
## (AC 23677)

Foti, Schaller and Dupont, Js.

Argued October 17, 2003—officially released January 20, 2004

*Dianne M. Andersen,* for the appellant (defendant).

*William J. Kupinse, Jr.,* for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, Martin W. Kremenitzer, appeals from the judgment of the trial court that granted the motion filed by the plaintiff, Janet P. Kremenitzer, to correct a qualified domestic relations order (QDRO).[1] The defendant claims that the court incorrectly granted the plaintiff's postjudgment motion to correct the QDRO by valuing his 401 (k) plan as of the date of the dissolution of the marriage of the parties rather than as of the "last valuation date prior to the date distribution is to occur," as provided in the QDRO. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The plaintiff and the defendant signed a separation agreement, dated May 22, 2001, which was incorporated on the same date into the judgment of dissolution of their marriage. One of the terms of the agreement provided for a division of retirement assets. The issue in this appeal involves the interpretation of § 11.1, "Article XI: Retirement," of the agreement. It dictates the division of various retirement accounts and states in relevant part: "These [retirement] accounts shall be totaled and an equalization shall be accomplished. A Qualified Domestic Relations Order will be necessary to accomplish the division. . . . [T]he Court shall retain jurisdiction, with regard to the order, until such time as the division has been imple-

---

[1] A qualified domestic relations order is an order of the court assigning to an alternate payee, in compliance with the Internal Revenue Code, 26 U.S.C. § 414 (p), the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1056 (d) (3), and General Statutes § 46b-81, a portion or all of the benefits payable to a participant in a retirement plan. In this case, the defendant is the participant in a 401 (k) retirement plan, and the plaintiff is the alternate payee.

mented. The division shall be made on the basis of values as of the day of dissolution or as close to that date as values can be obtained."[2]

The court approved the QDRO on January 23, 2002.[3] Paragraph four of the QDRO states that "[p]ayment to the [plaintiff] pursuant to this Order shall occur as soon as administratively possible after this Order is deemed a QDRO by the Plan Administrator." In paragraph five, the QDRO states that "50% of the [defendant's] account balance as of May 22, 2001, adjusted for gains and losses from such date to the last valuation date prior to the date distribution is to occur, shall be disbursed to the [plaintiff]. . . ." Between May 22, 2001, the date of the judgment of the dissolution of the parties' marriage, and the proposed date of distribution as described in the QDRO, the value of the assets in the defendant's possession decreased significantly. The plaintiff's motion to correct the QDRO was granted prior to any distribution of the defendant's 401 (k) plan. The court corrected the QDRO, striking the language that required an adjustment for gains and losses from May 22, 2001, to the last valuation date prior to distribution.

The defendant's sole claim on appeal is that the court incorrectly granted the plaintiff's postjudgment motion to correct. We are unaware of any appellate decision that directly controls the outcome of the defendant's claim. The defendant contends that the court impermissibly modified a property award. According to the defendant, the language of the QDRO as executed

---

[2] The separation agreement also provides that the agreement was to settle all claims and demands, and "any and all claims which either of [the] parties may have upon or against the property and estate of the other for maintenance, alimony, support and for any other matters whatsoever." Article IV of the agreement provides that "it is the intention of the parties that this agreement be absolute, unconditional and irrevocable. . . ."

[3] Another QDRO also was approved by the court, but it did not involve the 401 (k) plan and is not the subject of this litigation.

"clearly confirms the intent of the separation agreement and the judgment." Thus, it is the defendant's contention that the QDRO as executed and the judgment of dissolution, which incorporated the parties' agreement, are in harmony as to intent, and that the correction by the court of the QDRO to delete the language adjusting the valuation to reflect gains and losses since the date of dissolution was an impermissible assignment of property after the judgment of dissolution.

We agree that a property award is nonmodifiable and that except for fraud, a court has no continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of the property of one party to the other. See *Billings* v. *Billings*, 54 Conn. App. 142, 148, 732 A.2d 814 (1999). We do not agree, however, that the intent of the parties as stated in the separation agreement is synonymous with the language of the QDRO that is at issue.

In deciding the motion to correct, the court was faced with two contradictory documents. Neither, when viewed separately, is ambiguous. The separation agreement signed by the parties provides for a valuation of the assets as of the date of dissolution; the QDRO signed by counsel for both parties provides for a valuation as of the date of the last valuation prior to distribution. The right of the plaintiff to a portion of the defendant's retirement benefits was created by the separation agreement. The QDRO was necessary to implement the judgment that had incorporated the parties' agreement. The QDRO was the vehicle for enforcing the judgment of the court. Beyond our determination that the language of the QDRO differed from the language of the separation agreement and the judgment of dissolution as to the date of valuation, there is no necessity to discuss the intent of the signatories as to the QDRO. It is the intent of the parties when executing the separation agreement that controls our discussion.

The plaintiff in this case did not seek a correction of the agreement or of the judgment, but of the QDRO. Thus, the claim of the defendant that the court impermissibly opened and modified a judgment must fail. See *Taylor* v. *Taylor*, 57 Conn. App. 528, 531, 752 A.2d 1113 (2000); *Holcombe* v. *Holcombe*, 22 Conn. App. 363, 576 A.2d 1317 (1990).

As background to our discussion of the issue to be resolved, we note certain principles. "In a marriage dissolution action, an agreement of the parties executed at the time of the dissolution and incorporated into the judgment is a contract of the parties." (Internal quotation marks omitted.) *Sullivan* v. *Sullivan*, 66 Conn. App. 501, 504, 784 A.2d 1047 (2001); see also *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). Separation agreements incorporated by reference into dissolution judgments are to be interpreted consistently with accepted principles governing contracts. *Sweeny* v. *Sweeny*, 9 Conn. App. 498, 500–501, 519 A.2d 1237 (1987). A court has an affirmative obligation to determine that a separation agreement is fair and equitable before incorporating it by reference into a dissolution judgment. General Statutes § 46b-66 (a); *Jucker* v. *Jucker*, 190 Conn. 674, 676, 461 A.2d 1384 (1983).

Although in this case we are concerned with the interpretation of a separation agreement, it is useful to review cases where no separation agreement exists, and a court determines the distribution of assets. In the absence of any exceptional intervening circumstances, the date a dissolution of marriage is granted is the proper time to determine the value of the parties' estate upon which to base division. An increase in the value of property following the date of dissolution does not constitute an exceptional circumstance. *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990).[4]

[4] In *Sunbury*, an initial appeal had concerned periodic alimony; *Sunbury* v. *Sunbury*, 13 Conn. App. 651, 662, 538 A.2d 1082 (1988); but our Supreme Court's subsequent remand of the matter required the trial court to consider

Logically, there is no reason why the same date should not be used when there has been a decrease in the value of property. The usual rule in the interpretation of dissolution judgments, when no separation agreement exists, is that financial awards are based on the parties' *current* (date of the judgment) financial circumstances. *Wendt* v. *Wendt*, 59 Conn. App. 656, 661, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); *Cuneo* v. *Cuneo*, 12 Conn. App. 702, 709, 533 A.2d 1226 (1987).

In this appeal we are concerned with the intent of the parties as expressed in the separation agreement. If a contract is unambiguous within its four corners, the intent of the parties is a question of law, requiring plenary review. *Issler* v. *Issler*, supra, 250 Conn. 235. If, however, a contract is ambiguous, the clearly erroneous standard of review is used because the intent of the parties is a question of fact.[5] *Amodio* v. *Amodio*, 56 Conn. App. 459, 470, 743 A.2d 1135, cert. granted on other grounds, 253 Conn. 910, 754 A.2d 160 (2000) (appeal withdrawn September 27, 2000).

A word is ambiguous when it is "capable of being interpreted by reasonably well-informed persons in either of two or more senses." (Internal quotation marks omitted.) *Aetna Life & Casualty Co.* v. *Braccidiferro*, 34 Conn. App. 833, 840, 643 A.2d 1305 (1994), cert. granted on other grounds, 232 Conn. 901, 651 A.2d 743

all financial orders, including the division of assets. *Sunbury* v. *Sunbury*, 210 Conn. 170, 174–75, 553 A.2d 612 (1989). After the required hearing, a second appeal was brought to determine the appropriate date for valuation of assets. In deciding on the date of the judgment of dissolution of the marriage, the second *Sunbury* case notes the need for a fixed benchmark for valuation in most dissolution of marriage cases. *Sunbury* v. *Sunbury*, supra, 216 Conn. 677.

[5] The defendant, in his reply brief, stresses that no evidence was taken or offered by the parties as to intent. If the separation agreement language were ambiguous, the intent of the parties would be a question of fact to be determined on remand in an evidentiary hearing. See *Page* v. *Page*, 77 Conn. App. 748, 749, 825 A.2d 187 (2003).

(1995) (appeals withdrawn September 1, 1995). Ambiguous also means "unclear or uncertain . . . [or] that which is susceptible of more than one interpretation" or "understood in more ways than one." (Citation omitted; internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 538, 441 A.2d 151 (1981).

The plain words of the agreement in this case are not ambiguous. They unmistakably provide that the intent of the parties, as evidenced in the separation agreement, was to divide the asset "on the basis of values as of the day of dissolution or as close to that date as values can be obtained." See *Perritt* v. *Perritt*, 54 Conn. App. 95, 730 A.2d 1234 (1999). That intent, as a matter of law, controls the date of valuation of the asset, which is the date of the judgment of dissolution of the marriage.

The judgment is affirmed.

In this opinion the other judges concurred.