# STEPHEN J. BRUNO *v.* LISA BRUNO
## (AC 30879)
## (AC 32079)

Beach, Espinosa and Dupont, Js.

Argued May 20—officially released December 6, 2011

*Lisa Bruno*, pro se, the appellant-appellee (defendant).

*Norman A. Roberts II*, filed a brief for the appellee-appellant (plaintiff).

*Opinion*

ESPINOSA, J. These appeals arise out of two post-judgment orders related to the judgment of dissolution of the parties' marriage on March 17, 2008. In the cross appeal by the defendant, Lisa Bruno, from the trial court's ruling on the motion by the plaintiff, Stephen J. Bruno, to modify his alimony obligations, AC 30879, the defendant claims that the court improperly (1) modified the plaintiff's alimony obligation on the basis of a substantial change in his financial circumstances and (2) ordered her to pay expert witness fees.

In the defendant's appeal from the trial court's post-dissolution order regarding the division of certain assets held in a Charles Schwab bank account, AC 32079, the defendant claims that the court improperly (1) failed to order that the account be divided as of the date of

the dissolution judgment and (2) concluded that certain pendente lite orders remained in effect during a stay associated with prior appeals. We reverse in part and affirm in part the judgment of the trial court in AC 30879 and reverse the judgment of the trial court in AC 32079.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of these appeals. The parties' marriage was dissolved on March 17, 2008. At the time of the dissolution, the court, *Hon. Sidney Axelrod*, judge trial referee, ordered the plaintiff to pay alimony to the defendant in the amount of $4000 per week. On January 2, 2009, the plaintiff filed a motion to modify the court's alimony order, citing a substantial change in his financial circumstances. On February 26, 2009, the court, *Winslow, J.*, granted the plaintiff's motion for modification, ordering that the plaintiff's alimony be reduced to $1500 per week as of the date of the judgment, increasing to $3000 per week on January 1, 2010. The court also ordered that the defendant pay $1000 to cover deposition fees for an expert witness. The plaintiff filed an appeal from this order, AC 30879, and the defendant filed a cross appeal in AC 30879. The plaintiff's appeal was dismissed by this court.[1]

In addition to the orders regarding alimony, the court, in the March 17, 2008 judgment of dissolution, ordered the division of certain assets in a Charles Schwab bank account (Schwab account). The defendant filed several appeals, which had the effect of staying the equitable division of the marital assets, including the Schwab account, during the pendency of the appeals. On August 31, 2009, the defendant withdrew her appeals, thereby

---

[1] The defendant filed a motion to dismiss the plaintiff's appeal on July 29, 2010, on the basis of the plaintiff's continuous contemptuous conduct. This court granted the motion to dismiss on October 13, 2010.

lifting the stay. On September 19, 2009, the defendant filed a motion for contempt in an effort to compel the plaintiff to comply with the court's order regarding the division of the Schwab account. Ultimately, the court, *Winslow, J.*, calculated the amount owing out of the Schwab account based on the value of the assets as of August 31, 2009, the date the stay was lifted. The defendant challenges the propriety of Judge Winslow's ruling in AC 32079. We will address each of the defendant's appeals in turn. Additional facts and procedural history will be set forth as necessary.

I

AC 30879

In the first of these appeals, AC 30879, the defendant alleges that the court (1) improperly modified the plaintiff's alimony obligation based on a substantial change in the plaintiff's financial circumstances and (2) improperly ordered that she pay $1000 in expert witness fees. We will address each of these claims in turn.

A

With regard to the defendant's first claim in AC 30879, the defendant contends that the court improperly concluded that there was a substantial change in the plaintiff's financial circumstances that rendered the original alimony order unjust. The following additional facts are relevant to this aspect of the appeal. At the time of dissolution, on March 17, 2008, the plaintiff was unemployed but was seeking employment as a "senior portfolio manager running individual portfolios devoted to technology and telecommunications;" a position where the plaintiff expected to earn $1 million per year. Prior to his unemployment, the plaintiff earned $2.1 million during his most recent full year of compensation. The court found that the plaintiff was employable as a senior portfolio manager. At the time of the dissolution, there

were only 102 such positions available in the country. The court concluded that the plaintiff had a gross annual earning capacity of $1 million and the defendant had a gross annual earning capacity of $100,000. The court ordered weekly alimony payments to the defendant in the amount of $4000.

On January 2, 2009, the plaintiff brought a motion to modify the original alimony orders entered pursuant to the March 17, 2008 judgment of dissolution. The plaintiff claimed that there was a substantial change in his circumstances because his "earning capacity had been substantially reduced and/or eliminated" and he had "obtained employment at a compensation level that is substantially less than his earning capacity was determined to be." At the hearing on the motion to modify, the plaintiff presented testimony from David Bartram, a partner at an executive search firm specializing in financial services,[2] who testified as an expert on "the current status of the job market, employment opportunities and compensation levels in the portfolio management field." Bartram testified that there were presently no portfolio management jobs available. Bartram also testified, however, that he did not know if executive search firms other than the firm at which he was a partner had available positions similar to that of a portfolio manager.

At the hearing, the plaintiff testified that, although he actively sought employment prior to the date of dissolution, he was no longer seeking employment as a portfolio manager. Rather, the plaintiff described himself as self-employed since January, 2008, two months prior to the date of the judgment entering the original

[2] Specifically, Bartram testified that his company is on retainer with several clients including investment banks, brokerage firms, commercial banks, and asset management companies. When one of these clients has a position to fill, Bartram's company identifies candidates that would be suitable to fill the open positions.

alimony orders. Specifically, the plaintiff testified that he was currently running a hedge fund that he had founded. Although he was not yet earning a profit from this employment, the plaintiff testified that he believed the endeavor would become profitable and that he decided to start the hedge fund because he believed that it was the only way he could replicate the level of compensation he had received at his previous employment.

In light of this evidence, the court concluded that there had been a substantial change in the plaintiff's financial circumstances. The court reasoned that this substantial change occurred "because, essentially, of economic conditions that have occurred [as evidenced by] the testimony of Mr. Bartram that there has been a substantial decline in the availability of positions in the field with which [the plaintiff] is most familiar as well as [the plaintiff's] testimony himself." The court then held that the plaintiff had a present earning capacity of $150,000, which would increase to $650,000 by January 1, 2010, when the court believed, based on evidence presented at the hearing, that the plaintiff's hedge fund would become profitable. Therefore, the court reduced the plaintiff's alimony payment to $1500 per week as of the date of the judgment, increasing to $3000 per week on January 1, 2010.

Before addressing the plaintiff's claim, we set forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact

is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492–93, 830 A.2d 394 (2003).

"General Statutes § 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted. . . . In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. They have chiefly to do with the needs and financial resources of the parties. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances

is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion only includes the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 734–38, 638 A.2d 1060 (1994).

On the basis of our thorough review of the record, we conclude that the court abused its discretion by granting the plaintiff's motion to modify his alimony obligations. In the present case, there was no distinct and definite change in the plaintiff's circumstances that would warrant modification of his alimony obligations. Although the court credited Bartram's testimony regarding the status of the job market for portfolio managers, the plaintiff testified that he was not searching for a job as a portfolio manager and was currently self-employed at a hedge fund, an endeavor that he voluntarily began two months prior to the original judgment setting the alimony amount. Moreover, although the plaintiff testified that he had unsuccessfully searched for a job as a portfolio manager prior to the judgment of dissolution, this evidence, relating to events and circumstances prior to the dissolution, was not a proper basis for the court's determination regarding a substantial change in circumstances for purposes of a motion to modify alimony. See, e.g., id., 746 (error for court to consider evidence of events and circumstances antecedent to most recent alimony order when determining whether there was substantial change in

circumstances). Thus, for the entirety of the relevant period of time between the original judgment of dissolution and the modification, the plaintiff's employment situation remained unchanged. In light of this, we conclude that the court could not reasonably find that there was a decrease in the plaintiff's earning capacity that constituted a substantial change in the plaintiff's financial circumstances.[3]

## B

The defendant's next claim in AC 30879 is that the court improperly ordered that she pay expert witness fees in the amount of $1000 for her deposition of Bartram.[4] The defendant contends that the court violated

[3] Insofar as the court found a change in circumstances because of a substantial decline in the availability of portfolio manager positions, we are not persuaded. At the time of the dissolution, the court evaluated the plaintiff's earning capacity not in terms of his actual earned income, but by considering his skills, employability, age and health. The court discussed the facts that he held a master of business administration degree, was a chartered financial analyst and had expertise as a "value investor specializing in technology and communications." As stated previously, at the time of the dissolution, the court found that the plaintiff was seeking one of the very limited number of senior portfolio manager positions in the country but that he did not have such employment. At the time that it considered the motion to modify, the court heard testimony from Bartram, based only on the perspective of his executive search firm, that there were no portfolio manager positions available. The court also heard evidence from the plaintiff that he was not seeking such employment, but had become self-employed in another venture prior to the date of dissolution.

We conclude that the evidence concerning the decline in the availability of senior portfolio manager positions did not affect the plaintiff's earning capacity. The plaintiff has not demonstrated that any change in his skills or employability has occurred. To the contrary, the plaintiff testified that, in short time, he expected to replicate the level of compensation he had earned as a senior portfolio manager, while self-employed at his hedge fund.

[4] The defendant also claims that the court erred in relying on Bartram's testimony as an expert witness. The plaintiff disclosed Bartram as an expert "concerning the amount the plaintiff can realistically be expected to earn considering his vocational skills, employability, age and health." Ultimately, the court did not allow Bartram to testify regarding the plaintiff's earning capacity, and instead deemed Bartram qualified as an expert as to the "current status of the job market and employment opportunities and compensation levels in the portfolio management field." The defendant claims the

her right to due process by ordering that she pay Bartram's expert fees without providing an adequate hearing. We disagree.

The defendant acknowledges that she did not raise this claim before the trial court and requests review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "Our Supreme Court held in *Golding* that a party can prevail on an issue not preserved at trial only if all of the following four conditions are met: (1) the record is adequate to review the claim; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the appellant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . If any one of these conditions is not met, the appellant cannot prevail. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. . . . *Golding* applies to civil as well as criminal cases." (Internal quotation marks omitted.) *Corriveau* v. *Corriveau*, 126 Conn. App. 231, 234, 11 A.3d 176, cert. denied, 300 Conn. 940, 17 A.3d 476 (2011).

The defendant has provided this court with a transcript of the entire relevant proceeding, and her claim therefore meets the first prong of *Golding*. Additionally,

---

court erred by allowing Bartram to testify as an expert. The defendant did not raise this claim before the trial court. Rather, counsel for the defendant, after conducting voir dire of Bartram, expressly stated that the defendant had no objection to Bartram's expert testimony. "Our rules of procedure do not allow a [party] to pursue one course of action at trial and later, on appeal, argue that a path he rejected should now be open to him. . . . To rule otherwise would permit trial by ambuscade." (Internal quotation marks omitted.) *Larobina* v. *McDonald*, 274 Conn. 394, 402, 876 A.2d 522 (2005). Because the defendant did not object to Bartram's testimony as an expert before the trial court, we will not review her claim on appeal.

the defendant has satisfied the second prong of *Golding* because the claim is of a constitutional magnitude alleging a deprivation of her right to due process. As such, her claim is reviewable. The defendant has failed, however, to demonstrate that the alleged constitutional violation exists and deprived her of a fair trial. Therefore, she cannot prevail under the third prong of *Golding*.

The following additional facts are relevant to the defendant's claim. The defendant conducted a deposition of Bartram on January 19, 2009. Subsequently, the plaintiff submitted several requests to the defendant to pay Bartram's deposition fee, in accordance with Practice Book § 13-4 (c) (2).[5] The defendant did not comply with these requests, and the plaintiff filed a motion for contempt on February 20, 2009. Bartram testified on behalf of the plaintiff at the February 24, 2009 hearing on the plaintiff's motion to modify. At the hearing, the plaintiff offered Bartram's bill for the January 19, 2009 deposition as an exhibit, to which the defendant did not object. Additionally, Bartram testified regarding the contents of the bill and the time spent at the deposition. The defendant's attorney cross-examined Bartram regarding these topics. At the conclusion of the hearing, the court ordered the defendant to pay $1000 for her deposition of Bartram.

The defendant claims that the court violated her constitutional rights to due process by ordering that she pay

[5] Practice Book § 13-4 (c) (2) provides: "Unless otherwise ordered by the judicial authority for good cause shown, or agreed upon by the parties, the fees and expenses of the expert witness for any such deposition, excluding preparation time, shall be paid by the party or parties taking the deposition. Unless otherwise ordered, the fees and expenses hereunder shall include only (A) a reasonable fee for the time of the witness to attend the deposition itself and the witness' travel time to and from the place of deposition; and (B) the reasonable expenses actually incurred for travel to and from the place of deposition and lodging, if necessary. If the parties are unable to agree on the fees and expenses due under this subsection, the amount shall be set by the judicial authority, upon motion."

Bartram's deposition fee without providing an adequate hearing. The defendant argues that the court erred by deciding issues raised in the plaintiff's motion for contempt "without conducting a trial like hearing on the issues." As an initial matter, we note that the court never ruled on the plaintiff's February 20, 2009 motion for contempt. No order entered regarding that motion and the defendant was not held in contempt. Thus, in light of the fact that the court did not rule on the motion for contempt, the defendant's claim that the court improperly ruled on the motion for contempt without providing an adequate opportunity for a hearing must fail. To the extent that the defendant claims that the court did not provide her with an adequate hearing before ordering that she pay Bartram's fee, we conclude that the defendant was provided an adequate hearing on this issue during the February 24, 2009 hearing on the motion for modification.

"A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. . . . It is a fundamental tenet of due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution that persons whose . . . rights will be affected by a court's decision are entitled to be heard at a meaningful time and in a meaningful manner. . . . Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained."

(Internal quotation marks omitted.) *Gil* v. *Gil*, 94 Conn. App. 306, 316, 892 A.2d 318 (2006).

In the present case, we conclude that the defendant was given a reasonable opportunity to be heard on the issue of Bartram's deposition fee. The plaintiff offered evidence at the hearing regarding Bartram's fee for the deposition, including testimony and an exhibit outlining his fees. Although the defendant did not offer any evidence regarding Bartram's fee for the deposition, she had the opportunity to do so. Moreover, the defendant was given ample opportunity to, and did, in fact, cross-examine Bartram regarding his fee for the deposition. In light of these facts, we conclude that the defendant was provided with an adequate opportunity to subject the factual determinations underlying the court's order regarding Bartram's fees to meaningful adversarial testing in compliance with the requirements of due process. As such, the defendant has not established that the alleged constitutional violation clearly exists, and her claim fails under the third prong of *Golding*.

## II

## AC 32079

In the second of these appeals, AC 32079, the defendant claims that the court (1) improperly ordered that assets in the Schwab account be divided based on the value of the account on the date the stay associated with the defendant's appeal from the dissolution judgment was terminated, rather than the value of the account on the date of dissolution, and (2) improperly concluded that pendente lite orders regarding the shelter costs of the parties' properties remained in effect during the stay. We agree with the defendant and reverse the judgment of the trial court on both grounds. Before addressing each of these claims in turn, we note that we review the defendant's claims under the abuse

of discretion standard outlined in part I A of this opinion. See *Demartino* v. *Demartino*, supra, 79 Conn. App. 492–93.

A

The defendant's first claim in AC 32079 is that the court improperly failed to value assets in the Schwab account as of the date of the judgment of dissolution. The following additional facts and procedural history are relevant to this claim. Pursuant to the terms of the judgment of dissolution, the defendant was awarded $300,000 out of the Schwab account, which the court identified as containing $2,451,343.62 as of August 31, 2007. In addition, the court ordered that a debt in the amount of $22,826 was to be paid out of the Schwab account. The remainder of the Schwab account was to be divided equally between the parties. As previously noted, the defendant filed several appeals that stayed the property distribution provided for in the judgment of dissolution. See Practice Book § 61-11. On September 2, 2008, the defendant filed a motion to terminate the stay, which the court, *Hon. Sidney Axelrod*, judge trial referee, denied on October 14, 2008. On August 31, 2009, the defendant withdrew her appeals. The plaintiff, however, did not transfer the assets in the Schwab account, prompting the defendant to file a motion for contempt on September 18, 2009. The court, *Winslow, J.*, heard argument on the motion for contempt on December 22, 2009. The court did not hold the plaintiff in contempt, but ordered that the plaintiff comply with the dissolution orders forthwith. In addition, the court held that, for purposes of dividing the account, the parties were to determine the value of the account as of the date of dissolution. On January 4, 2010, the plaintiff appealed from Judge Winslow's order on the motion for contempt. The defendant filed a motion to terminate the stay associated with that appeal on January 14, 2010.

On March 8, 2010, the court heard argument on the defendant's motion to terminate the stay. At the hearing, the plaintiff testified that a certain asset in the Schwab account had decreased in value since the date of dissolution due to market conditions. The plaintiff also testified that he had withdrawn funds from the Schwab account to meet his living expenses. At the conclusion of the hearing, the court issued an order on the defendant's motion to terminate the stay, concluding that no stay was in place, but, to the extent that there was a stay, it was terminated. In addition, the court ordered that the "division of assets will be as of the date the defendant withdrew her appeal." The defendant filed a motion to reargue on March 15, 2010, which the court denied by memorandum of decision filed March 30, 2010. In its memorandum of decision, the court held that the account was to be divided as of August 30, 2009, the date the defendant withdrew her appeals.[6] The court concluded that any funds withdrawn by the plaintiff needed to "be added back in to determine the amounts due to each party as of August 30, 2009." The court also held that "[a]ny interest or dividends added to the account from the [date of dissolution] to August 30, 2009, and any diminution [in value] of the account due to the market conditions should not be attributed as a benefit to or assessed as a burden against one party or the other."

On July 2, 2010, the court conducted a hearing to determine the amounts owed to each party out of the Schwab account. After calculating the value of the account as of August 31, 2009, the court awarded the

---

[6] We note that the court held that the account was to be divided as of the date the defendant withdrew her appeals. Although the court referred to this date as August 30, 2009, in its order and subsequent memorandum of decision, the defendant's appeals were actually withdrawn on August 31, 2009. When calculating the amount owed to the defendant, the court used the date of August 31, 2009.

defendant $1,404,337.26 and $88,941.36 in interest. This appeal followed.

The defendant claims that the court erred by calculating the amount owed to each party based on the value of the Schwab account on the date she withdrew her appeals, rather than the date of dissolution. We agree with the defendant.

Our Supreme Court has held that "[i]n the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce is the proper time by which to determine the value of the estate of the parties upon which to base the division of property. . . . An increase in the value of the property following dissolution does not constitute such an exceptional circumstance." (Citation omitted; internal quotation marks omitted.) *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990); see also *Bornemann* v. *Bornemann*, 245 Conn. 508, 521, 752 A.2d 978 (1998) ("the date of dissolution is the appropriate date on which to value the parties' assets"). In *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 139–40, 838 A.2d 1026 (2004), this court held: "In the absence of any exceptional intervening circumstances, the date a dissolution of marriage is granted is the proper time to determine the value of the parties' estate upon which to base division. An increase in the value of property following the date of dissolution does not constitute an exceptional circumstance. . . . Logically, there is no reason why the same date should not be used when there has been a decrease in the value of property." (Citation omitted.)

In light of the precedent from our Supreme Court as well as from this court, we conclude that the trial court improperly ordered that the Schwab account be divided based on its value as of August 31, 2009, rather than on its value as of the date of dissolution. The date of

the judgment of dissolution, March 17, 2008, was the proper date upon which to value the assets held in the Schwab account. The parties were each entitled to a portion of this asset in accordance with the property orders in the judgment of dissolution, based on the value of the asset on the date of dissolution. Therefore, we conclude that the court abused its discretion by valuing the Schwab account on the date the defendant withdrew her appeals, rather than the date of dissolution.

B

The defendant's second claim in AC 32079 is that the court improperly concluded that pendente lite orders, providing for the payment of shelter costs for properties owned by the parties, remained in effect during the pendency of the stay associated with the defendant's appeal from the dissolution order. We agree.

The following additional facts and procedural history are relevant to the defendant's claim. The parties owned two properties that are relevant to this claim, one located at 111 Spring Valley Road in Ridgefield and the other located at 38 Pumping Station Road in Ridgefield. Pursuant to a stipulated pendente lite order, shelter costs for these properties were paid out of the Schwab account. In the judgment of dissolution, the court, *Hon. Sidney Axelrod*, judge trial referee, ordered that all of the shelter expenses associated with the Spring Valley property were to be paid by the plaintiff until the property was sold. The court also ordered that all of the shelter costs associated with the Pumping Station Road property were to be paid by the defendant until such time that that property was sold.

At the July 2, 2010 hearing to determine the amounts owed to each party out of the Schwab account, the court, *Winslow, J.*, held that the pendente lite orders relating to the shelter costs of these properties

remained in effect during the stay associated with defendant's appeals from the judgment of dissolution. Thus, the court allowed for deductions from the Schwab account from the date of dissolution until the date the defendant withdrew her appeals for payment of the shelter costs of the Spring Valley property. Additionally, the court credited the defendant for shelter costs she paid out of her own funds during this period for the Pumping Station Road property.

The defendant claims that the court erred by concluding that the pendente lite orders remained in effect for the period of time after the dissolution judgment until the stay associated with the defendant's appeals was terminated. We agree.

"[P]endente lite orders are interlocutory in nature and terminate with the rendition of the final judgment . . . ." *Sweet* v. *Sweet*, 190 Conn. 657, 662, 462 A.2d 1031 (1983). "An appeal does not vacate a judgment; it serves only to stay the enforcement of the rights acquired by the successful litigant. . . . In other words, [the judgment of dissolution is] final unless set aside by [an appellate court], and it dispos[es] with finality of all interlocutory orders." (Citation omitted.) *Saunders* v. *Saunders*, 140 Conn. 140, 146, 98 A.2d 815 (1953). This court's decision in *Caracansi* v. *Caracansi*, 4 Conn. App. 645, 496 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56 (1985), is instructive in our resolution of this appeal. In *Caracansi*, this court, in the context of reviewing a ruling on a motion for contempt, held that pendente lite orders relating to the shelter costs of the parties' home were terminated as of the date of the dissolution despite the fact that the judgment of dissolution had been stayed due to the husband's appeal. Id., 652.

In light of this precedent, we conclude that the court abused its discretion by holding that the pendente lite

orders regarding the shelter expenses of the Spring Valley and Pumping Station Road properties remained in effect during the stay of the dissolution judgment. As in *Caracansi*, these pendente lite orders terminated on the date of the final judgment of dissolution, despite the fact that enforcement of the judgment had been stayed due to the defendant's appeal.

In AC 30879, the judgment is reversed only as to the granting of the plaintiff's motion to modify alimony and the case is remanded with direction to deny the motion; the judgment is affirmed in all other respects. In AC 32079, the judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.