******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RIITTA LABORNE *v.* JOHN C. LABORNE
(AC 39650)

Alvord, Bright and Beach, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dissolved, appealed to this court from the judgment of the trial court issuing certain financial orders and finding in favor of the plaintiff on certain postjudgment motions after the court granted the plaintiff's motion to open the judgment on the basis of fraud. The plaintiff's motion to open the judgment was based on the discovery that the defendant had failed to disclose a pension and individual retirement account on his financial affidavits at the time of dissolution. *Held:*

1. The trial court erred in failing to value the defendant's pension as of the date of the dissolution of the parties' marriage; in the absence of any exceptional intervening circumstances, the date a dissolution of marriage is granted is the proper time to determine the value of the parties' estate on which to base division, and the trial court improperly considered the dissipation of the asset after the dissolution judgment to constitute such an exceptional circumstance, as a postdissolution diminution of assets caused by market forces is not considered to be an exceptional circumstance, nor could the wilful dissipation of assets by the defendant in the context of the present case be considered such a circumstance.

2. The trial court erred in basing its alimony orders on the parties' gross income, rather than net income; in its memorandum of decision, the court expressed its calculation and award of alimony in terms of gross income, and although it made a finding as to the plaintiff's net income at the time of trial, it did not make a finding as to the defendant's net income and did not consider the plaintiff's net income in its determination of alimony, which should be based on the available net income of the parties, not gross income.

3. This court declined to address the plaintiff's claim that the court erred in concluding that the defendant was permitted to withdraw funds from his retirement account for the purpose of paying alimony; the trial court made that observation in its recitation of the factual history of the case, the subject matter was related to its ultimate finding that the defendant was in contempt, and because the plaintiff did not challenge or claim error in the contempt order, any further discussion would be academic.

Argued October 24, 2018—officially released April 23, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Emons, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Tindill, J.*, granted the plaintiff's motion to open the judgment; subsequently, the matter was tried to the court, *Colin, J.*; judgment for the plaintiff, from which the plaintiff appealed to this court. *Reversed; further proceedings.*

*Norman A. Roberts II*, with whom, on the brief, was *Tara C. Dugo*, for the appellant (plaintiff).

*Opinion*

BEACH, J. The plaintiff, Riitta LaBorne, appeals from the judgment of the trial court rendered following a postdissolution hearing. The plaintiff claims that the court erred in (1) failing to value the parties' assets as of the date of the dissolution, (2) basing its alimony orders on the parties' gross income, rather than net income, and (3) concluding that the defendant, John C. LaBorne, was permitted to withdraw funds from his retirement account for the purpose of paying alimony. We agree and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our decision. The parties were married in 1990 and have two sons. During the pendency of the dissolution proceedings, initiated in 2010, both parties submitted financial affidavits. In his affidavits, dated in 2011 and 2012, the defendant listed financial assets not exceeding $2000.

On March 22, 2012, the court, *Emons, J.*, dissolved the parties' marriage. In its judgment of dissolution, the court ordered that the parties share legal custody of their minor child. The court ordered the defendant to "pay to the plaintiff 35 [percent] of his gross annual income in excess of $150,000 per year" and to provide the plaintiff "unallocated alimony and child support in the amount of $5500 per month." The court awarded all marital assets to the plaintiff.

In September, 2012, the plaintiff filed a postjudgment motion for contempt in which she alleged that the defendant failed to make that month's required payment. The defendant responded with a motion to modify the orders regarding payments. The plaintiff amended her motion for contempt and alleged that the defendant had violated several additional court orders.

In the course of discovery on the pending motions, the defendant produced a copy of his 2013 income tax return, in which he reported that he withdrew $142,500 from an individual retirement account (IRA). After discovering this asset, the plaintiff filed a motion to open the judgment of dissolution on the basis of fraud. The plaintiff alleged, in relevant part, that the defendant never disclosed his IRA on any financial affidavit prior to the dissolution judgment, that between 2013 and 2014 the defendant withdrew "more than $300,000 in liquid assets" from his IRA, and that the defendant's alleged failure to disclose the IRA materially affected the court's orders.[1] The plaintiff requested a preliminary hearing and the right to conduct discovery in preparation thereof.

While the motion to open was pending, the plaintiff filed a motion requesting that the court order that the defendant pay Meyers, Harrison & Pia, a forensic accounting firm (accounting firm), for an analysis of the defendant's financial transaction history. On Janu-

ary 12, 2015, the parties entered into a stipulation in which they agreed that the defendant was not to withdraw money from his IRA other than to pay alimony or reimbursable expenses.[2] The court, *S. Richards, J.*, approved the stipulation. Thereafter, the court, *Tindill, J.*, granted the plaintiff's motion to open the judgment on the basis of fraud. The plaintiff filed a motion for clarification, seeking to limit the scope of retrial to "discovery of and distribution of marital assets as of the date of the dissolution of marriage . . . ." The court denied this motion, stating that "[j]udgment is opened as to all matters."

The plaintiff then filed a new motion requesting an order that there be no withdrawals whatsoever from the IRA prior to the retrial.[3] The plaintiff indicated that at retrial she would seek to have the IRA restored to its value as of the date of the dissolution trial and to be awarded the entire amount of the IRA.

On May 27, 2015, the court held a hearing on the plaintiff's motions for forensic accounting fees and to prohibit any further withdrawals from the defendant's IRA until the issuance of court orders after retrial. After hearing argument from counsel, the court granted the plaintiff's motion for forensic accounting fees. The court then turned to the plaintiff's motion regarding the IRA. The defendant testified as to the current value of his IRA, withdrawals he made from his IRA since entering into the January 12, 2015 stipulation, and the values of his other assets and debts.

The court determined that since the parties entered into the January 12, 2015 stipulation the defendant spent $37,875 from his IRA. The court determined that $20,625 was withdrawn to pay alimony and $4403 was spent on reimbursable expenses. The court further determined that the defendant could not account for the approximately $3450 per month ($13,800 over four months) that he had spent on personal living expenses. The court orally granted the plaintiff's motion to prohibit any further withdrawals from the defendant's IRA until the court ruled on the matter at retrial.

Prior to the retrial of the dissolution financial orders, the plaintiff requested that the accounting firm determine the amount the defendant withdrew from his IRA between June 6, 2013, and December 31, 2015, and to determine what the value of the IRA would have been, had the funds not been withdrawn. The accounting firm detailed its findings in a written report.

On July 29, 2016, the plaintiff filed a motion for contempt alleging that the defendant failed to pay alimony required for the month of July; she further alleged that "the [d]efendant will continue to fail and refuse to make alimony payments to the [p]laintiff until [the] court enters orders with respect to same."

On August 11 and 12, 2016, the court, *Colin, J.*, con-

ducted a new hearing regarding the dissolution financial orders and the plaintiff's motions for contempt. The plaintiff entered the accounting firm's report into evidence through one of its authors, Charles Strickland, a certified forensic examiner. The accounting firm reported that the defendant had participated in a pension plan through his employment with Credit Suisse First Boston from May 5, 1986, to March 14, 2008, accruing a single life annuity benefit of $6800 per month beginning at age sixty-five. On May 15, 2013, a little more than one year after the dissolution judgment was entered and when he was fifty-one years old, the defendant elected to receive an early distribution of his pension benefit. Consequently, the defendant's monthly annuity benefit was actuarially reduced from $6800 to $3075.31.

Instead of electing a monthly annuity form of pension payment, however, the defendant elected to receive his benefit in a lump sum of $635,537.41, and on June 6, 2013, the sum of $651,158.76, was deposited into an IRA. Between then and December 31, 2015, the defendant made withdrawals from the IRA totaling $511,050.[4] In addition, the defendant lost $93,638.62 in option trading between June, 2013, and March, 2015. As of December 31, 2015, the balance in the IRA was $47,553.35.

On the basis of the financial affidavits he reviewed, Strickland further opined that, as of the date of dissolution, the defendant had not disclosed his pension to the plaintiff, nor had he disclosed his participation in a 401 (k) plan[5] offered through his employer, Credit Suisse First Boston. The plaintiff testified that she had not discovered that the defendant had a pension and 401 (k) assets until the defendant produced his tax returns in connection with postdissolution proceedings.

The defendant claimed that after the plaintiff became aware of the IRA, he used IRA funds to pay alimony and other reimbursable expenses. He introduced his 2013 tax return, which showed that the defendant received $142,500 in IRA distributions and paid $105,000 in alimony; his 2014 tax return, which stated that he received $226,410 in IRA distributions and paid the plaintiff $67,476 in alimony; his form 1099-R from 2015, which showed that he received $142,140 in IRA distributions; and a list of checks he paid to the plaintiff in 2015, totaling $63,492, of which the defendant claimed $58,450 was used for alimony and reimbursable payments.

The court, in its memorandum of decision dated August 17, 2016, credited Strickland's testimony and relied on the accounting firm's report. The court found that the defendant withdrew $511,050 from his IRA between 2013 and 2015, and that the defendant's decisions to elect an early retirement benefit and to engage in trading further reduced the value of the IRA. The court also found that the defendant failed to disclose

his pension and 401 (k) benefits prior to the parties' divorce in 2012. The court found that although some of the payments to the plaintiff had been derived from the defendant's IRA, the defendant unilaterally had spent the funds and that "the plaintiff can never be made whole for her loss."

The court issued orders as to the division of the remaining IRA funds: "The defendant shall transfer one hundred percent (100%) of the value of his IRA to an account designated by the plaintiff on or before September 15, 2016. The January 12, 2015 court order [prohibiting withdrawals except for alimony] is incorporated by reference into this judgment and shall survive the entry of this judgment." The court ordered alimony based on the gross earning capacities of both parties.[6] The value of the IRA which was transferred was $46,326, the amount remaining at the time of the retrial. As to the motions for contempt, the court found that the defendant had wilfully and intentionally failed to pay alimony for the months of July and August, 2016, and ordered the defendant to pay the plaintiff $8324 by September 15, 2016. This appeal followed.

After filing the appeal, the plaintiff requested that the court articulate, inter alia, the value of the defendant's IRA which was awarded to her and the date of the valuation. The court articulated as follows: "The value of the defendant's accrued benefit in the undisclosed pension as of the date of the initial decree was [$6800] per month starting at the defendant's age [sixty-five]; that benefit was reduced to [$3075.31] per month as a result of the defendant's early retirement, lump sum election. This court credited the testimony of the plaintiff's expert witness. Thus, this court considered the value of the undisclosed asset at the time of the entry of the initial dissolution decree.

"The amount remaining in the defendant's IRA at the time of the trial in August of 2016 was $46,326; that remaining amount was ordered to be transferred in its entirety to the plaintiff. Thus, in addition to considering the value of the pension at the time of the initial decree in 2012, the court also considered the following exceptional intervening circumstances that occurred between the date of the initial decree in 2012 and the 2016 trial before this court; specifically, the defendant's post-divorce early retirement, lump sum election of the previously undisclosed pension, in the amount of approximately $635,000, the conversion of the asset, post-divorce, from a pension to an IRA, and the defendant's payment to the plaintiff, from these funds, in the approximate total amount of $235,968 in the years 2013, 2014 and 2015 (all paid to the plaintiff postdivorce)."

I

The plaintiff's principal claim is that the trial court erred in failing to use the value of the defendant's pen-

sion as of the date of their divorce in its determination of the distribution of assets. We agree.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *Bruno* v. *Bruno*, 132 Conn. App. 339, 345–46, 31 A.3d 860 (2011).

"[W]hether the court properly held that the appropriate date of valuation of the parties' marital assets, for purposes of the distribution of those assets, was the date of its original decree . . . is well settled and is controlled by our Supreme Court's ruling in *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990), in which the court held that, in a marital dissolution action, the date of valuation of marital assets is the date that the dissolution decree is rendered." *Light* v. *Grimes*, 136 Conn. App. 161, 166–67, 43 A.3d 808, cert. denied, 305 Conn. 926, 47 A.3d 885 (2012).

In *Sunbury*, the plaintiff wife appealed to this court, which remanded the case for a redetermination of financial orders after the trial court had incorrectly calculated the defendant husband's income. *Sunbury* v. *Sunbury*, supra, 216 Conn. 674–75. In the time period following the original dissolution judgment, the value of the husband's profit sharing plan had quadrupled, but the court used the value as of the original dissolution in its financial orders on remand. Id., 675–76. The wife appealed from the trial court's new financial orders, arguing that the court should have valued the parties' assets as of the date of remand, and not as of the date of dissolution. Id., 675.

In rejecting the wife's claim, our Supreme Court held: "The division of property and the entry of orders of alimony in dissolution proceedings are governed by General Statutes §§ 46b-81 (a) and 46b-82. Section 46b-81 (a) provides in part: '*At the time of entering a decree* . . . dissolving a marriage . . . the superior court may assign to either the husband or wife all or any part of the estate of the other.' . . . Similarly, § 46b-82 provides in part: '*At the time of entering the decree*, the superior court may order either of the parties to pay alimony to the other . . . .' The only temporal reference in the enabling legislation refers us to the time of the decree as controlling the entry of financial orders. It is neither

unreasonable nor illogical, therefore, to conclude that the same date is to be used in determining the value of the marital assets assigned by the trial court to the parties. . . . Section 46b-81 (a) involves the assignment of *marital* assets. To the extent that the plaintiff seeks consideration of a postdecree appreciation in the value of property, such appreciation, having occurred after the termination of the marriage, is no longer a marital asset." (Citation omitted; emphasis in original.) Id., 676.

This court has observed that "[i]n the absence of any exceptional intervening circumstances, the date a dissolution of marriage is granted is the proper time to determine the value of the parties' estate upon which to base division. An increase in the value of property following the date of dissolution does not constitute an exceptional circumstance. . . . Logically, there is no reason why the same date should not be used when there has been a decrease in the value of property." (Citation omitted.) *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 139–40, 838 A.2d 1026 (2004); see *Bruno* v. *Bruno*, supra, 132 Conn. App. 352–55 (dissolution date proper valuation date for bank account even though account value subsequently decreased); *Watson* v. *Watson*, 221 Conn. 698, 702–703 n.2, 607 A.2d 383 (1992) (dissolution date proper valuation date despite husband subsequently conveying interests in properties).

The accrued pension benefit was marital property until the original dissolution judgment. See *Sunbury* v. *Sunbury*, supra, 216 Conn. 676. The property, a financial asset, was subject to distribution. The plaintiff argues that by declining to fashion orders using the value of the asset as of the dissolution date, the court, in essence, did not account for a substantial amount of the marital assets.[7]

The court, however, suggested that exceptional intervening circumstances justified the decision at the retrial not to follow the prescribed course of valuing the marital asset as of the time of dissolution and then distributing that asset. As previously stated, the court considered the dissipation of the asset after the dissolution judgment to constitute such an exceptional circumstance. A postdissolution diminution of assets caused by market forces is not considered to be an exceptional circumstance. See *Kremenitzer* v. *Kremenitzer*, supra, 81 Conn. App. 139–40. We fail to see how intentional reduction of the asset could qualify. The wilful dissipation of assets by the defendant in the context of the present case does not constitute such a circumstance. The court erred, then, in concluding that the dissipation of assets constituted an "exceptional intervening circumstance," and in not entering an order distributing the value of the asset as of the date of the original judgment of dissolution.

## II

The plaintiff next claims that the trial court erred in basing its alimony orders on the parties' gross income, rather than net income. We agree.

As indicated previously in this opinion, the court, after a new hearing on the dissolution financial matters, entered the following order as to alimony: "[T]he plaintiff has a gross annual earning capacity of no less than $20,000 and the defendant has a gross annual earning capacity of no less than $100,000. Starting September 15, 2016, the defendant shall pay to the plaintiff . . . the sum of $3000 in alimony until the death of either party. This order is based on the earning capacities set forth above. The defendant shall further pay to the plaintiff an amount equal to 33 percent . . . of the gross amount of any employment income that he earns in excess of $100,000 per year . . . ."

The court had before it the financial affidavits of both parties. In its memorandum of decision, the court expressed its calculation and award of alimony in terms of gross income. The court made a finding as to the plaintiff's net income at the time of trial,[8] but it did not make a finding as to the defendant's net income and did not consider the plaintiff's net income in its determination of alimony.

Ordinarily, net income is the proper basis for alimony orders. "[I]t is well settled that a court must base its child support and alimony orders on *the available net income of the parties, not gross income.* . . . Whether an order falls within this prescription must be analyzed on a case-by-case basis. Thus, while our decisional law in this regard consistently affirms the basic tenet that support and alimony orders must be based on net income, the proper application of this principle is context specific. . . . [W]e differentiate between an order that is a function of gross income and one that is based on gross income. . . . [T]he term based as used in this context connotes an order that only takes into consideration the parties' gross income and not the parties' net income. Consequently, an order that takes cognizance of the parties' disposable incomes may be proper even if it is expressed as a function of the parties' gross earnings." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Procaccini* v. *Procaccini*, 157 Conn. App. 804, 808, 118 A.3d 112 (2015). The court in the present case did not calculate the financial orders as a function of gross income but, rather, used only gross income itself. The court erred, then, by basing financial orders on gross income.

## III

Finally, the plaintiff asks us to correct a statement made by the trial court in its discussion of facts underlying its conclusion that the defendant was in contempt, even though the plaintiff does not challenge the judg-

ment of contempt. The court, in its memorandum of decision, noted that "the defendant has failed to pay to the plaintiff the alimony of [$4163] per month for July and August of 2016. He has the funds to pay it. He has a court ordered stipulation that authorizes him to pay it from the IRA. He still failed to pay." The plaintiff claims that the defendant was prohibited from withdrawing funds from the IRA for any purpose, so that the court's observation was erroneous. The plaintiff correctly states that Judge Tindill, on May 27, 2015, ordered that the defendant not withdraw money from the IRA for any purpose.

We find it unnecessary to address the merits of the plaintiff's contention. The court made the observation in the course of its recitation of the factual history of the case. The subject matter was related to the court's ultimate finding that the defendant was in contempt, and the court entered orders based on the finding of contempt. The plaintiff does not claim error in the conclusions or orders regarding contempt. The trial court did not modify or negate Judge Tindill's May 27, 2015 order, which remained in effect. Further discussion is academic, because the plaintiff is not appealing from a judgment as to this issue. See General Statutes § 52-263; *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 194, 884 A.2d 981 (2005) ("the statutory right to appeal is limited to appeals by aggrieved parties from final judgments"); *McCallum* v. *Inland Wetlands Commission*, 196 Conn. 218, 225, 492 A.2d 508 (1985), superseded on other grounds by *Paupack Development Corp.* v. *Conservation Commission*, 229 Conn. 247, 640 A.2d 70 (1994).

The judgment is reversed and the case is remanded for a new trial on the issues of financial orders and property distribution.

In this opinion the other judges concurred.

[1] The plaintiff's motion to open the judgment on the basis of fraud alleged, in part: "In conjunction with [the defendant's] motion for modification of alimony, the defendant produced his tax return for 2013, which showed that he withdrew $142,000 from an IRA. Moreover, during 2014, [the] defendant has withdrawn another $196,000 from his IRA . . . . No individual retirement account was disclosed on any financial affidavit submitted to the court; indeed, the defendant submitted financial affidavits and represented to the plaintiff and the court that he was insolvent. [The] plaintiff herself had no knowledge of the existence of an IRA . . . .The failure to disclose the existence of an account [with] more than $300,000 in liquid assets is clearly fraudulent, there is a likelihood amounting to virtual certainty that the existence of this fund, had it been disclosed, would change the result of the court's decision, and the plaintiff has not delayed in filing this motion since learning of the existence of these funds, which were uncovered less than three weeks prior to the date hereof . . . ."

[2] The stipulation provided in relevant part: "The parties agree that the [d]efendant shall not withdraw money from his IRA, with the exception of money used to pay his current alimony obligation to the [p]laintiff and his share of reimbursables as required by the March 22, 2012 orders issued by Judge Emons. . . . The [d]efendant [represents] there is currently $185,423 on hand in the IRA."

[3] The plaintiff's motion requested, in relevant part, a court order that "no portion of [the defendant's IRA] funds shall be withdrawn until the [c]ourt decides to whom it should be awarded at a retrial of this case . . . ."

[4] The plaintiff, in her brief, notes that, according to the accounting firm's report, in the time period from May 27, 2015, when the court ordered that no further withdrawals be made from the IRA, to December 31, 2015, the defendant made sixteen withdrawals totaling $100,003.

[5] The accounting firm's report does not analyze the 401 (k) account, and the court's memorandum of decision refers to a nondisclosed "smaller 401 (k) account" only in passing. Both the court and the accounting firm's report trace the financial history of the pension entitlement and the succeeding IRA only. The plaintiff has not included in her brief any separate claim as to the 401 (k). We therefore have neither the need nor the record to analyze any issue concerning the 401 (k) plan.

[6] The memorandum of decision provides in relevant part: "[T]he plaintiff has a gross annual earning capacity of no less than $20,000 and the defendant has a gross annual earning capacity of no less than $100,000. Starting September 15, 2016, the defendant shall pay to the plaintiff, on or before the fifteenth day of each month, the sum of $3000 in alimony until the death of either party. This order is based on the earning capacities set forth above. The defendant shall further pay to the plaintiff an amount equal to thirty-three percent (33%) of the gross amount of any employment income that he earns in excess of $100,000 per year within five business days of his receipt of any employment income in excess of $100,000."

[7] On this point, the plaintiff notes that in *Oldani* v. *Oldani*, 154 Conn. App. 766, 108 A.3d 272, cert. denied, 315 Conn. 930, 110 A.3d 433 (2015), this court held that valuation of the couples' jointly held marital home on a date other than the dissolution was not reversible because the plaintiff failed to show how he was harmed by that decision. The plaintiff argues that she, on the other hand, suffered harm as a result of the court's failure to value the IRA as of the date of dissolution. We agree; furthermore, unlike the accrued pension benefit in the present case, which was exclusively held by the defendant, *Oldani* concerned an asset that the parties owned in equal shares. See id., 774–75.

[8] The court found that the plaintiff's net income at the time of trial was $88 per month. The court based its award of alimony on its finding of a gross earning capacity of no less than $20,000 per year.

_____