******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRISTOL BOARD OF EDUCATION *v.* STATE BOARD OF LABOR RELATIONS ET AL.
## (AC 37564)

DiPentima, C. J., and Alvord and West, Js.

*Argued February 16—officially released June 21, 2016*

(Appeal from Superior Court, judicial district of New Britain, Schuman, J.)

*William R. Connon*, with whom, on the brief, was *Zachary D. Schurin*, for the appellant (plaintiff).

*Harry B. Elliott, Jr.*, general counsel, for the appellee (named defendant).

*J. William Gagne, Jr.*, with whom, on the brief, was *Kimberly A. Cuneo*, for the appellee (defendant AFSCME, Council 4, Local 2267).

*Opinion*

ALVORD, J. The plaintiff, the Bristol Board of Education (school board), appeals from the judgment of the Superior Court affirming the decision of the defendant State Board of Labor Relations (labor board), sustaining the complaint brought by the defendant Local 2267 of Council 4, American Federation of State, County and Municipal Employees (union) against the school board. The school board argues that the court erred in affirming the labor board's decision that the school board violated General Statutes § 7-470 (a) (4) of the Municipal Employee Relations Act (act) by failing to abide by ground rules that were agreed upon at the commencement of successor contract negotiations. The labor board concluded that the school board's negotiating committee did not comply with the agreed upon ground rules after reaching a mediated tentative agreement with the union regarding the outsourcing of food service operations.

The school board claims that the trial court erred by (1) not finding that the ground rules were inapplicable, as a matter of law, to the mediated tentative agreement on food service operations, (2) not finding that the school board did not intend for the ground rules of the successor collective bargaining agreement to apply to midterm bargaining over issues regarding food service operations, and (3) concluding that the labor board appropriately interpreted the agreed upon ground rules to require the negotiating committees to unanimously recommend ratification of the mediated tentative agreement regarding food service operations to their respective constituents. We affirm the judgment of the trial court.

The school board was an employer within the meaning of the act, and the union was the exclusive bargaining representative of the school board's cafeteria employees. Beginning on July 1, 2009, the school board and the union were parties to a collective bargaining agreement that was scheduled to expire on June 30, 2013.[1] On February 27, 2013, the school board's human resources director sent a letter to the union president seeking to initiate negotiations on a successor agreement. In the same letter, the school board's human resources director disclosed that, due to budget constraints, the school board wanted to have the ability to outsource food service operations. The 2009 contract had prohibited outsourcing: "There shall be no subcontracting or outsourcing of food service operations during the term of this Agreement . . . ."

The parties commenced new contract negotiations in May, 2013. Each party identified a negotiating committee consisting of seven representatives. The school board's negotiating committee included four school board members. At the outset, the parties agreed to a

set of ground rules that would govern their conduct as they negotiated a new agreement. Paragraph 9 of the agreed upon ground rules stated: "When a tentative agreement is reached on the entire contract, it shall be reduced to writing and presented for ratification by the full Board and the Union. Both parties agree that any tentative agreement reached at the table shall be recommended to their respective constituents for ratification."

By July, 2013, representatives for the school board and union had not reached an agreement as it pertained to food service operations. Under the midterm bargaining rules of the act, the parties initiated binding arbitration proceedings only as to the issue of outsourcing food service operations.[2] In a joint stipulation, the parties submitted their initial positions on the food service operation issue. The school board sought contractual language stating: "The Board shall have the right to subcontract or outsource food service operations if and when it deems it to be in the best interest of the Bristol Public Schools to do so." The union requested that the collective bargaining agreement be silent as to the outsourcing of food service operations.

In an effort to reach a mutual agreement and avoid the imposition of an arbitration panel decision, the parties simultaneously entered into mediation with respect to the food service operations. On August 14, 2013, with the assistance of a state mediator, the negotiating committees for the parties reached a tentative agreement that was memorialized in writing. The mediated tentative agreement included union concessions as to cafeteria employee benefits and stated in relevant part that there would be "[n]o contract language on cafeteria layoff/outsourcing" and "[n]o other cafeteria – specific changes shall be proposed in negotiations over a successor collective bargaining agreement."[3] The representatives of each party presented the mediated tentative agreement to their respective constituents for final approval.

The union's membership was the first to vote on the mediated tentative agreement. The union ratified the mediated tentative agreement and notified the school board. On September 5, 2013, the school board met in executive session to discuss the mediated tentative agreement. The school board's human resources director testified before the labor board that three of the school board members who served on the negotiating committee recommended to their fellow school board members that they ratify the mediated tentative agreement. During the same session, school board member Larry Amara, who also served on the negotiating committee, stated that he was " 'having trouble' " with the mediated tentative agreement. At no time during the school board meeting did he affirmatively endorse ratification of the mediated tentative

agreement. The school board convened into public session and voted five to four to reject the mediated tentative agreement. Amara was among the board members who voted against the mediated tentative agreement. The three other school board members who served on the negotiating committee voted to approve the mediated tentative agreement.

After the school board voted against ratification of the mediated tentative agreement, the union filed a complaint with the labor board.[4] The union alleged that the board had violated § 7-470 (a) (4)[5] when it failed to ratify the mediated tentative agreement. More specifically, the union argued that Amara's actions violated the parties' ground rules and thus constituted a failure to bargain in good faith as required by the statute. The labor board concluded that Amara's actions violated the ground rules that were agreed to on May 28, 2013, because Amara did not recommend ratification of the mediated tentative agreement and he voted against ratification. The labor board found that: "The parties signed the [mediated] tentative agreement with the mutual intent that each would present and recommend it to their respective constituents pursuant to paragraph 9 of the May 28, 2013 ground rules." The labor board concluded: "Ground rules for collective bargaining negotiations are a mandatory subject of bargaining and the taking of unilateral action inconsistent with a mutually agreed upon ground rule constitutes a refusal to bargain in good faith and a prohibited practice. . . . The School Board violated the mutually agreed upon ground rules and the Act when members of its bargaining committee failed to recommend approval of a tentative agreement." The labor board ordered that the school board implement the terms and conditions of the August 14, 2013 mediated tentative agreement.[6]

The school board appealed the labor board's decision to the trial court, *Schuman, J.* The school board first argued that its negotiating committee members were not required to recommend ratification. In support of its argument, the school board claimed that the agreed upon ground rules were not applicable as a matter of law to the mediation resulting in the tentative agreement and substantial evidence was not presented to support the labor board's conclusion that the parties had mutually intended for the ground rules to apply under these mediation circumstances. However, this argument contradicted language used by the very same school board in a posthearing brief filed with the labor board: "*Pursuant to the parties' ground rules*, the tentative agreement was recommended to the full Bristol Board of Education by the Chairperson of the Negotiating Committee, the Chairperson of the Bristol Board, and the Human Resources Director." (Emphasis added.) The trial court concluded that the school board's claims could not be reviewed because they had not been raised before the labor board. These claims

were dismissed.

The school board also challenged the labor board's interpretation of the ground rules requiring the negotiating committee members to unanimously recommend and vote in favor of ratification of the mediated tentative agreement. At the administrative hearing, the labor board had rejected this argument and concluded: "Construed in the context of the ground rules as a whole, paragraph 9 imposes the obligation to recommend a tentative agreement upon each party's entire negotiating committee and, as such, unanimity is required." The trial court affirmed the labor board's interpretation of the ground rules after finding that its conclusion was consistent with its past decisions and therefore "not unreasonable, arbitrary, illegal or an abuse of discretion." The trial court affirmed the labor board's decision and dismissed the appeal. This appeal followed.

I

The school board claims on appeal that the labor board committed plain error by finding that the parties' agreed upon ground rules could, as a matter of law, continue to apply to negotiations regarding food service operations even after the issue was submitted to arbitration. The trial court declined to consider whether the agreed upon ground rules applied to the negotiations once arbitration commenced because the claim was not raised before the labor board.[7] The school board invites us to review its claim under the plain error doctrine or, in the alternative, requests that we exercise our supervisory power to reach its claim. We conclude that plain error review is not warranted in the present case nor do the specific circumstances of this case justify the exercise of our supervisory power.

At the outset we set forth the standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *AFSCME, AFL-CIO, Council 4, Local 2405* v. *Norwalk*, 156 Conn. App. 79, 85–86, 113 A.3d 430 (2015).

A

We begin with the school board's claim of plain error. "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party.

[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. . . . [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 76–78, 60 A.3d 271 (2013).

After a careful review of the record, we conclude that the circumstances of this case are not appropriate for the plain error doctrine. During the labor board hearing, the school board did not argue that the parties' agreed upon ground rules did not, as a matter of law, continue to apply to negotiations regarding food service operations even after the issue was submitted to arbitration. Instead, the school board chose to argue that its actions were *in accordance* with the ground rules. This court repeatedly has frowned upon rescuing failed trial strategies by way of the plain error doctrine. *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 73, 967 A.2d 41 (2009); *State* v. *Ortiz*, 71 Conn. App. 865, 875, 804 A.2d 937, cert. denied, 261 Conn. 942, 808 A.2d 1136 (2002); see *Clougherty* v. *Clougherty*, 131 Conn. App. 270, 274–75, 26 A.3d 704, cert. denied, 302 Conn. 948, 31 A.3d 383 (2011). We decline to apply this extraordinary remedy to permit an advocate to revisit its selection of litigation strategy.[8]

B

The exercise of this court's supervisory power is equally inapplicable to the circumstances of this case. "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . The exercise of our supervisory powers

is an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) *In re Yasiel R.*, 317 Conn. 773, 789, 120 A.3d 1188 (2015).

"[T]he rule invoking our use of supervisory power is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide lower courts in the administration of justice in all aspects of the [adjudicatory] process. . . . Indeed, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of [this court's] supervisory powers." (Citation omitted; internal quotation marks omitted.) Id., 790.

The school board's unpreserved claim does not implicate the integrity of the underlying trial or the perceived fairness of the judicial system as a whole. At the hearing before the labor board, the school board argued that mutual intent did not exist between the parties as to the terms of the mediated tentative agreement regarding food service operations, and alternatively, that the negotiating committee had satisfied the recommendation requirement of the ground rules because three members recommended ratification. These arguments were in sharp contrast to the school board's argument to the trial court that the ground rules could not, as a matter of law, apply to the mediated tentative agreement. As the trial court noted: "It is thus apparent that the [school board] has simply changed its theories for purposes of this appeal." These are not the exceptional circumstances that justify deviation from the general rule that an unpreserved claim will not be reviewed.

II

The school board also claims that substantial evidence did not exist to support the labor board's factual finding that the school board intended to be bound by the ground rules in the situation of a tentative agreement that did not cover the entire successor collective bargaining agreement. The school board contends that its ratification vote on the mediated tentative agreement was voluntary and not covered under the ground rules. This claim was raised before the trial court. The trial court dismissed this claim because it too was not raised at the hearing before the labor board.[9] Our review of the record reveals that the school board failed to raise this claim before the labor board. Therefore, we too decline to review it.

Our rules of practice concerning unraised claims also apply to appeals from administrative proceedings. *Fer-*

*raro* v. *Ridgefield European Motors, Inc.*, 313 Conn. 735, 759, 99 A.3d 1114 (2014). "Practice Book § 60-5 provides in relevant part that [t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . Indeed, it is the appellant's responsibility to present such a claim clearly to the trial court so that the trial court may consider it and, if it is meritorious, take appropriate action. That is the basis for the requirement that ordinarily [the appellant] must raise in the trial court the issues that he intends to raise on appeal. . . . For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) Id., 758–59.

"A party to an administrative proceeding cannot be allowed to participate fully at hearings and then, on appeal, raise claims that were not asserted before the board. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) *Dragan* v. *Connecticut Medical Examining Board*, 223 Conn. 618, 632, 613 A.2d 739 (1992).

The school board first raised this claim before the trial court. Despite participating fully in the hearing before the labor board, the school board did not claim that the parties lacked mutual intent for the ground rules to apply in the circumstances underlying this appeal. Instead, the school board argued that its actions were consistent with the ground rules. The school board has not offered a compelling reason as to why this claim should now be reviewed by this court, and further we find no plain error present. We decline to review the claim.

### III

Finally, the school board argues that "the trial court erred when it upheld the agency's interpretation of the ground rules . . . to require unanimity."[10] The labor board concluded that the school board's negotiating committee was required by the ground rules to unanimously recommend the mediated tentative agreement. The trial court found that this conclusion was consistent with the labor board's past decisions and therefore was not unreasonable, arbitrary, illegal, or an abuse of dis-

cretion. We agree with the trial court.

"[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Labor Relations*, 299 Conn. 63, 72, 7 A.3d 371 (2010).

"Judicial review of the conclusions of law reached administratively is . . . limited. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts." (Citations omitted; internal quotation marks omitted.) *Barnett* v. *Board of Education*, 232 Conn. 198, 207–208, 654 A.2d 720 (1995).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 231, 951 A.2d 1249 (2008). "In ascertaining intent, we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." (Internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109–110, 570 A.2d 690 (1990).

The labor board did not act unreasonably by concluding that the ground rules required the negotiating committees to unanimously recommend the mediated tentative agreement to their respective constituencies. It is undisputed that the agreed upon ground rules did not specify that unanimous recommendation of a mediated tentative agreement by the respective negotiating committees was required. However, the lack of elaboration as to what was meant by the term "recommended," required that the labor board construe the parties' intentions in order to decide the case, and the school board did not claim before the labor board that the parties lacked mutual intent for the ground rules to apply to the mediated tentative agreement.

Sufficient evidence was presented to the labor board for it to conclude that school board member Amara

did not endorse ratification of the mediated tentative agreement and, in fact, he expressed that he was " 'having trouble with it.' " The labor board interpreted this as an expression of dissent. This conclusion was supported by the fact that Amara subsequently voted against ratifying the mediated tentative agreement.

The labor board relied on a past decision to conclude that the school board had violated the ground rules when Amara failed to recommend ratification of the mediated tentative agreement. In *In re Guilford*, Conn. Board of Labor Relations Decision No. 2858 (October 29, 1990) p. 8, the labor board found that a union had violated similar ground rules[11] regarding recommendation of a tentative agreement because each union negotiating committee member, individually, failed to exercise the "joint duty of the negotiating committees' members to recommend ratification of the contract . . . ." In that case the labor board emphasized the purpose behind adherence to the ground rule: "[C]ollective bargaining is a difficult process and agreements are rarely easy to obtain. . . . [This ground rule] . . . was obviously calculated to provide any tentative agreement reached by the parties with the best possible opportunity to be ratified by requiring each of the negotiating committees to recommend it to their respective constituents." (Internal quotation marks omitted.) Id., 7. In view of the evidence presented, the labor board did not act unreasonably, arbitrarily, illegally or in abuse of its discretion by concluding that the school board had violated the ground rules when its negotiating committee did not unanimously recommend ratification of the mediated tentative agreement.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The collective bargaining agreement was written to be effective through June 30, 2012. On June 23, 2011, the board and the union agreed to extend the agreement until June 30, 2013. The union represented many of the school board's nonteacher employees including cafeteria employees.

[2] Midterm bargaining refers to the negotiation of a specific issue that occurs during the term of an existing collective bargaining agreement. L. Bingham, "Mid-Term Bargaining Disputes and Binding Interest Arbitration for Public Sector Employees," 17 Conn. L. Rev. 365, 366 (1985). "Mid-term bargaining disputes may stem from an employer's effort to change an existing practice that affects a major term or condition of employment (such as wages, benefits, or hours), to subcontract work previously performed by bargaining unit employees to some outside firm, or to close down an existing facility." Id., 366 n.7. In this case, the parties resorted to midterm bargaining procedures as an effort to separate the food service outsourcing issue from the overall negotiations on a successor collective bargaining agreement. In a series of e-mails concerning the commencement of binding arbitration, the school board's lead negotiator stated, and the union's representative concurred: "The parties agree it is in their mutual interest to resolve the outsourcing issue before concluding negotiations on the entire contract, and hopefully well before the start of the next school year. We believe that the mid-term bargaining approach offers the best way of accomplishing that goal."

[3] The mediated tentative agreement effectively prohibited the school board from outsourcing food service operations. The school board stated in its posthearing brief: "While the tentative agreement offered some concessions from the cafeteria workers and savings to the [school] board, those savings were not sufficient to offset the $300,000 deficit in the food service oper-

ations."

[4] While the complaint was pending before the labor board, the arbitration proceedings continued. In November, 2013, the union filed an application for a temporary restraining order seeking to enjoin the arbitration proceedings, but the court, *Young, J.*, denied the application. On January 15, 2014, prior to the judgment of the labor board, the arbitration panel awarded the school board its last best offer. Pending the outcome of the labor board hearing, the arbitration award allowed the school board to outsource food service operations at its discretion.

[5] General Statutes § 7-470 (a) (4) states in relevant part: "Municipal employers or their representatives or agents are prohibited from . . . refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit . . . ."

[6] The labor board also dismissed as moot a petition filed by the school board that sought a declaratory ruling that the proposed outsourcing of food service operations was subject to arbitration before the state board of mediation and arbitration. This petition was in response to the union's claim that arbitration of the outsourcing of food service operations issue violated the constitutional rights of its members. The labor board's decision ordered the implementation of the terms and conditions of the mediated tentative agreement that the parties reached through mediation instead of the terms and conditions imposed by the arbitration panel's award.

[7] The school board did not raise the claim of plain error to the trial court.

[8] Because we find that the plain error doctrine is wholly inappropriate to save the school board from its voluntary strategic decision before the labor board, we do not address whether this court may exercise plain error review of an administrative agency's decision.

[9] The school board has not sought plain error review of this claim.

[10] The school board has not specified whether it is addressing the labor board's conclusion that the negotiating committee was required to unanimously recommend the mediated tentative agreement or that the school board members who served on the negotiating committee were required to unanimously vote to ratify the mediated tentative agreement. After reviewing the record, we find it unnecessary to reach the issue of whether the labor board properly concluded that school board members who served on the negotiating committee were required to vote to approve the mediated tentative agreement when the full school board voted on the agreement. The labor board's conclusion, that the school board members of the negotiating committee did not unanimously recommend the mediated tentative agreement to the school board, was sufficient to establish that the school board had violated the ground rules and thus the act.

[11] The labor board found: "Mutually agreed-upon ground rules for negotiations were agreed to on November 24, 1987, and required, 'upon overall agreement between the parties, that the Town and the Union would recommend the settlement to their constituent bodies.' Furthermore, the ground rules mandated that both the Union and the Town would be represented by a Chief Spokesperson, who would be the only person authorized to make proposals and reach tentative agreements." *In re Guilford*, supra, Conn. Board of Labor Relations Decision No. 2858, p. 2.