******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDWARD HAMMER *v.* DOMINIC POSTA ET AL.
(AC 38194)

Lavine, Alvord and Harper, Js.

*Argued November 28, 2016—officially released February 14, 2017*

(Appeal from Superior Court, judicial district of

Fairfield, Hon. Edward F. Stodolink, judge trial referee.)

*Nicholas Stanisci*, for the appellants (defendants).

*James E. Butler*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendants, Dominic Posta and Leticia Posta, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Edward Hammer. After rendering a default judgment against Leticia Posta for her failure to appear, the court found Dominic Posta liable to the plaintiff under General Statutes § 22-357[1] for injuries caused by the defendants' dog and awarded the plaintiff $30,910.30 in damages and court costs.[2] On appeal, the defendants claim that the court improperly (1) denied the defendant's request for a jury trial, and (2) relied on the arguments of counsel rather than reviewing the medical records that had been admitted as evidence.[3] We affirm the judgment of the trial court.

The court reasonably could have found the following facts.[4] On May 19, 2012, the plaintiff was walking his leashed dog, Odie, a twenty-one pound miniature schnauzer, when the defendants' dog, Sarge, a seventy-pound pit bull, came across the street and charged at the plaintiff's dog. The plaintiff grabbed Odie and placed him on his shoulder in an attempt to keep Sarge from harming him. Sarge jumped up and latched his teeth onto Odie's left hind leg, at the base of his tail and back. Although the plaintiff tried to pry Sarge off Odie, he was unsuccessful and was supporting the full weight of both dogs during the attack. Hearing the commotion, a neighbor came over to assist the plaintiff and opened the gate to allow the plaintiff and Odie to enter, thereby separating them from Sarge.

The plaintiff took Odie to the VCA Shoreline Veterinary Referral and Emergency Center, where he was treated for his injuries. The veterinary bill totaled $643. The plaintiff, although not bitten by the defendants' dog, suffered injuries to his thumb and back. His medical expenses totaled $3637.45. Additionally, the plaintiff was unable to work for a short period of time. On October 18, 2012, the plaintiff commenced this action against the defendants seeking monetary damages. Although the plaintiff initially claimed his case for a jury trial, he withdrew his jury claim on October 6, 2014.

The defendant was a self-represented party until February 17, 2015, at which time counsel filed an appearance on his behalf. That same day, the defendant's counsel filed a motion to continue the date of the scheduled trial from February 18 to April 16, 2015. The court, *Bellis*, *J.*, denied the defendant's motion for a continuance. Although there is nothing in the record regarding a further request for a continuance, both parties agree that the defendant's counsel made a verbal request for a continuance of the trial date on February 18, 2015, which the court granted until February 19, 2015. Again, although unsupported by the record, the parties agree that the defendant also verbally requested a jury trial

on February 18, 2015, which was denied by the court.

The trial proceeded on February 19, 2015. The court, *Hon. Edward F. Stodolink*, judge trial referee, heard testimony from the plaintiff, the defendant, the Stratford animal control officer, the police officer who responded to the plaintiff's 911 call on the day of the incident, and two neighbors. Additionally, fourteen exhibits were submitted into evidence by the plaintiff, which included the police incident report, the plaintiff's medical records and bills, the veterinary report and bill for Odie's treatment, and photographs of Odie's injuries. At the beginning of the trial, the plaintiff's counsel requested that the court take judicial notice of the plaintiff's life expectancy of 40.4 years. The court did so, after confirming that the defendant's counsel had no objection. After the evidence had concluded, the court heard brief closing arguments by both counsel and then rendered its judgment from the bench.

The court's oral decision was as follows: "Having heard the—the testimony of the various witnesses, I've—and through counsel the various exhibits and reports. I did not read them, but I'm sure that they were recited properly by the counsel. Based on that and the evidence I've heard or—or the arguments, I will enter a judgment in favor of the plaintiff and against the defendant." The court then awarded economic damages covering the plaintiff's medical bills, the veterinary bills and the plaintiff's lost wages in the amount of $5080.45.

With respect to noneconomic damages, the court stated: "According to the testimony of the plaintiff and the—the recital of the injuries, as the hospital records show, and—and the fact that the [plaintiff] has a life expectancy of forty years and it's indicated that he has continuing chronic pain to the thumb and also to his back, I will award him $25,000 . . . . So, the total is $30,080.45 plus costs." The defendant filed postjudgment motions for a new trial and for remittitur, which were denied by the court after a hearing on May 28, 2015.

On July 23, 2015, the defendants' appellate counsel filed separate appearances on behalf of Dominic Posta and Leticia Posta. On July 30, 2015, the defendants filed this appeal. The defendants filed a motion for articulation on November 2, 2015, requesting that the trial court articulate, inter alia, the evidence it relied on in determining that the plaintiff suffered permanent injuries. The court, in its response to the motion, stated: "The injuries to the plaintiff's left thumb and low back that occurred on May 19, 2012, continued to be symptomatic on the date of the hearing in this matter on February 19, 2015, and therefore were found to be permanent."

With this background in mind, we now turn to the defendants' specific claims.

I

The defendants claim that they were denied their state constitutional right to a trial by jury.[5] In support of that claim, the defendants argue that the defendant did not agree to the plaintiff's withdrawal of the jury claim, that the defendant was a self-represented party when the plaintiff withdrew his jury claim, that the defendant's counsel asserted the defendant's right to a jury trial on February 18, 2015, and that the court "had no discretion not to try the case to the jury."

The defendants concede that the record does not contain a transcript of the proceeding at which the defendant's counsel verbally requested a jury trial and the trial court denied that request. Accordingly, the defendants seek review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] or to prevail under the plain error doctrine.[7] We conclude that the defendants' claim fails under the first and third prongs of *Golding*.

General Statutes § 52-215 provides in relevant part: "The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day . . . civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity . . . . When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. . . ." General Statutes § 51-239b provides: "In civil actions a jury shall be deemed waived unless requested by either party in accordance with the provisions of section 52-215." Practice Book § 14-10 provides: "All claims of cases for the jury shall be made in writing, served on all other parties and filed with the clerk within the time allowed by General Statutes § 52-215. The jury claim fee shall be paid at the time the jury claim is filed."

Under our statutes, certain cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days of the return date or within ten days after an issue is joined. Thereafter, a case may be entered on the jury docket by the consent of all of the parties or by an order of the court. *Falk* v. *Schuster*, 171 Conn. 5, 7, 368 A.2d 40 (1976). "A party may forfeit the right to a jury trial in a civil case if the right is not asserted in a timely manner, may abandon the right to a jury trial if he or she chooses a forum that does not afford the right to a jury trial, or may waive the right to a jury trial. *L & R Realty* v. *Connecticut National Bank*, [246 Conn. 1, 10, 715 A.2d 748 (1998)]; see *Anastasia* v. *Mitsock*, Superior Court, judicial district of New Haven, Docket No. CV-05-

4012156-S (December 1, 2006) (42 Conn. L. Rptr. 453, 454) (summary of law since 1899 that failure to claim civil action to jury within thirty days of return date or within ten days after an issue of fact has been joined amounts to voluntary and intentional relinquishment of right to jury trial); see also General Statutes §§ 51-239b and 52-215." *Delahunty* v. *Targonski*, 158 Conn. App. 741, 749, 121 A.3d 727 (2015).

In the present case, the return date on the complaint is November 20, 2012. The defendants filed their answer on November 23, 2012. Although the plaintiff initially claimed the case to the jury list, he thereafter withdrew the jury claim on October 6, 2014. The plaintiff filed a certificate of closed pleadings and a claim for a court trial on October 21, 2014. At no time did the defendant file his own written claim for a jury trial. The defendants now argue that the defendant had been a self-represented party during that period of time and that he had not agreed to the plaintiff's withdrawal of the jury claim. Because the defendant's counsel made a verbal request for a jury trial on the day of the scheduled trial, the defendants claim that the court "had no discretion not to try the case to the jury." Significantly, the defendants cite no statutory or case law in support of the claim that, under such circumstances, a court is required as a matter of law to grant the request for a jury trial.

Moreover, we have no transcript to review that contains the request made by the defendant's counsel or the reasons for the court's denial of that request. Without a transcript, it is not possible to determine whether the defendant acquiesced in the court's ruling or otherwise waived his right to a jury trial. Although the defendants claim the record is adequate for review under *Golding*, we disagree and conclude that the claim fails under the first prong of *Golding*.

Nevertheless, assuming arguendo that the record is sufficient simply because a request for a jury trial was made and was denied by the court, we conclude that the defendants' claim fails under the third prong of *Golding*. It is not disputed that the defendant did not claim the case for a jury trial within thirty days of the return date or within ten days after an issue of fact had been joined. We recognize that the plaintiff had claimed the case to the jury list and that there was no reason for the defendant to file a jury claim at that time. When the plaintiff withdrew the jury claim on October 6, 2014, however, the defendant did not object to that withdrawal or file his own jury claim. Instead, the defendant waited until the scheduled date of the trial to orally request a trial by jury. By that time, the court reasonably could have concluded that the defendant's request was untimely and that he had forfeited his right to a jury trial. See *Delahunty* v. *Targonski*, supra, 158 Conn. App. 749. We therefore conclude that the defendant's rights under the Connecticut constitution were not vio-

lated under the circumstances of the present case.

## II

The defendants next claim is that the court improperly relied on the arguments of counsel, rather than reviewing the medical records that had been admitted as evidence, in determining the extent of the plaintiff's injuries and the appropriate amount of damages to be awarded. Specifically, they argue that the court found that the plaintiff's injuries were permanent and awarded damages for the plaintiff's life expectancy without looking at the medical reports. The defendants further claim that the court could not rely solely on the plaintiff's testimony to determine that he had sustained a permanent injury. We disagree.

The trial court stated that various exhibits and reports had been admitted into evidence, but that "I did not read them, but I'm sure that they were recited properly by the counsel. Based on that and the evidence I've heard or—or the arguments, I will enter a judgment in favor of the plaintiff . . . ." Those remarks are not reflective of exemplary judicial behavior. It is well established that "the trier [of fact] is bound to consider all the evidence which has been admitted, as far as admissible, for all the purposes for which it was offered and claimed." (Internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, 168 Conn. App. 207, 229, 145 A.3d 362 (2016), quoting *Giamattei* v. *DiCerbo*, 135 Conn. 159, 162, 62 A.2d 519 (1948). Nevertheless, although a court "is obligated to give careful consideration to all the evidence . . . it does not have to read the full text of every exhibit." (Emphasis omitted; internal quotation marks omitted.) *Moye* v. *Commissioner of Correction*, supra, 231.

During the trial in the present case, the plaintiff was questioned extensively by his counsel as to the extent of his injuries, and the defendant's counsel thoroughly cross-examined the plaintiff about those claimed injuries. Both counsel referred to the medical reports during the plaintiff's testimony, and portions of the reports were read into the record. Although inartfully expressed by the court, it is apparent that the court deemed that all relevant information had been presented, and that the court was satisfied that further review of those reports would not have been of any additional benefit.[8]

With respect to the defendants' claim that the court could not rely on the plaintiff's testimony alone to conclude that his injuries were permanent, Connecticut case law has long held to the contrary. "Our state courts have recognized that the permanency of an injury is a finding that can be determined by jurors without expert testimony. This principle is based on the recognition by Connecticut courts that jurors are able to evaluate for themselves the testimony of the plaintiff, as well as the nature and duration of the injury, the likelihood of

its continuance into the future, and the lack of total recovery by the time of trial. . . . If a jury has the opportunity to appraise the condition of a plaintiff and its probable future consequence, an award of damages for permanent injury and for future pain and suffering is proper." (Internal quotation marks omitted.) *Scandariato* v. *Borrelli*, 153 Conn. App. 819, 828–29 n.5, 105 A.3d 247 (2014). "A trier of facts can conclude, by inference, that an injury will be permanent even though there is no medical testimony expressly substantiating permanency." (Internal quotation marks omitted.) *Parker* v. *Supermarkets General Corp.*, 36 Conn. App. 647, 650, 652 A.2d 1047 (1995). In *Royston* v. *Factor*, 1 Conn. App. 576, 577, 474 A.2d 108, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984), this court concluded that the trier in fact could conclude, by inference, that the plaintiff's injury was permanent on the basis that her disability still existed two years after the accident.

Here, the trial court, in its articulation, noted that "[t]he injuries to the plaintiff's left thumb and low back that occurred on May 19, 2012, continued to be symptomatic on the date of the hearing in this matter on February 19, 2015, and therefore were found to be permanent." The court, hearing all of the plaintiff's testimony about his injuries and continuing pain, had the opportunity to evaluate the evidence and to determine the credibility of the testimony. "We cannot retry the facts or pass on the credibility of [a] witness." (Internal quotation marks omitted.) *Noroton Properties, LLC* v. *Lawendy*, 154 Conn. App. 367, 372, 107 A.3d 980 (2014). For all of the foregoing reasons, the defendants' second claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 22-357 provides in relevant part: "If any dog does any damage to either the body or property of any person, the owner or keeper . . . shall be liable for the amount of such damage, except when such damage has been occasioned to the body or property of a person who, at the time such damage was sustained, was committing a trespass or other tort, or was teasing, tormenting or abusing such dog. . . . For the purposes of this section, 'property' includes, but is not limited to, a companion animal, as defined in section 22-351a, and 'the amount of such damage', with respect to a companion animal, includes expenses of veterinary care . . . ."

General Statutes § 22-351a (a) defines a companion animal as "a domesticated dog or cat that is normally kept in or near the household of its owner or keeper and is dependent on a person for food, shelter and veterinary care, but does not include a dog or cat kept for farming or biomedical research practices."

[2] Dominic Posta was represented by counsel at trial. His counsel filed an appearance on his behalf on February 17, 2015, which was one day prior to the scheduled trial. The claims raised in this appeal are addressed to issues that occurred immediately prior to and during the trial, when Leticia Posta was unrepresented. For convenience, references in this opinion to the defendant in the singular are to Dominic Posta, and references to the defendants in the plural are to both Dominic Posta and Leticia Posta.

[3] The plaintiff filed a motion for default against Leticia Posta for her failure to appear on February 3, 2015, which was granted by the court clerk on February 10, 2015. On February 19, 2015, the day of trial, the plaintiff's counsel moved the court to render a judgment of default against Leticia Posta on the basis of that default. The court granted the motion. The default judgment against Leticia Posta has never been opened or vacated.

[4] The court did not issue a memorandum of decision but, rather, orally rendered judgment from the bench following the closing arguments of counsel. Notice of the court's decision was sent to all parties of record.

[5] Article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no persons shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In all civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40, as modified in *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

*Golding* is applicable in civil cases as well as in criminal cases. *Bruno* v. *Bruno*, 132 Conn. App. 339, 348–49, 31 A.3d 860 (2011); *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 79–80, 31 A.3d 810 (2011), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).

[7] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." (Internal quotation marks omitted.) *Bristol Board of Education* v. *State Board of Labor Relations*, 166 Conn. App. 287, 296, 142 A.3d 304 (2016). We decline to apply this extraordinary remedy under the circumstances of this case.

[8] Our determination that the trial court did not commit reversible error under the circumstances of the present case does not mean that we countenance the failure of a trial court to consider all of the relevant evidence submitted by the parties during a judicial proceeding. We reiterate the cautionary instructions that this court provided in *Moye* v. *Commissioner of Correction*, supra, 168 Conn. App. 235, wherein trial courts are advised: "If a . . . court concludes that it is not necessary to review certain exhibits in light of the manner in which it has disposed of the claims, it should endeavor to explain what it has not reviewed and why it is not necessary to do so. A court should strive to avoid leaving litigants with the impression that it has failed to discharge its duty or somehow acted unlawfully. Public confidence in our justice system is undermined if parties perceive that a court has not met its obligation to provide them with a full and fair review of their claims. We caution courts not to abrogate their duty to review the evidence admitted at trial or to give litigants the erroneous impression that they have done so."